Ellen M. Bronchetti (SBN 226975)
GREENBERG TRAURIG, LLP
12830 El Camino Real, Suite 350
San Diego, CA 92130
Telephone: (619) 848-2500
Facsimile: (619) 393-0877
ellen.bronchetti@gtlaw.com

Bailey A. Hashim (SBN 322098)
GREENBERG TRAURIG, LLP
400 Capitol Mall, Suite 2400
Sacramento, California 95814
Telephone: (916) 442-1111
Facsimile: (916) 448-1709
bailey.hashim@gtlaw.com

Attorneys for Defendant
ACCENTCARE, INC.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

JENESSA CUSACK, on behalf of herself and all others similarly situated,

Plaintiff,

v.

ACCENTCARE, INC.; and DOES 1 to 100, inclusive,

Defendants.

CASE NO.

**DEFENDANT ACCENTCARE, INC.'S NOTICE OF REMOVAL OF CLASS ACTION**

**[28 U.S.C. §§ 1332, 1441, and 1446]**

*[Filed concurrently with the Declarations of Ellen Bronchetti and Kelly Moriarty, Corporate Disclosure Statement, and Civil Case Cover Sheet]*

Removed from San Bernardino Superior Court – Case No. CIVSB2528052

Action Filed: September 24, 2025

TO THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA AND TO PLAINTIFF AND HER COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendant AccentCare, Inc. ("AccentCare" or "Defendant") files this Notice of Removal ("Notice") pursuant to 28 U.S.C. sections 1332, 1453, and 1711 to effect the removal of the above-captioned action, which was commenced in the Superior Court of the State of California for the County of San Bernardino. This Court has original subject matter jurisdiction over Plaintiff's lawsuit under 28 U.S.C. § 1332(d) because (1) Plaintiff seeks to represent more than 100 class members, (2) no defendant is a state, state official or other governmental entity, (3) there is sufficient diversity among the parties, and (4) Plaintiff's allegations place more than $5 Million in controversy, exclusive of interest and costs.[1]

## I. NATURE OF THIS REMOVAL PLEADING

1. AccentCare hereby provides "a short and plain statement of the grounds for removal" pursuant to 28 U.S.C. § 1446(a). In this regard, a notice of removal "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 84 (2014) ("*Dart Cherokee*"). Rather, "if the plaintiff contests the defendant's allegation . . . both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553–54. As held by the Ninth Circuit:

> [W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a

---

[1] This Notice of Removal relies on the nature and amount of damages that Plaintiff's Complaint places in controversy. Defendant refers to specific damage amounts and cites comparable cases solely to establish the amount in controversy exceeds the jurisdictional minimum. Defendant maintains that Plaintiff's claims lack merit that she cannot proceed on a class-wide basis, and that Defendant is not liable to Plaintiff or any member of the putative class for any amount whatsoever. Indeed, "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of [Defendant's] liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

> preponderance of the evidence that the jurisdictional requirements are satisfied.

*Arias v. Residence Inn*, 936 F.3d 920, 924 (9th Cir. 2019) (rejecting *sua sponte* remand). If the Court requires that AccentCare prove the facts alleged in this pleading, or to otherwise establish jurisdiction, AccentCare is prepared to do so. Similarly, AccentCare is prepared to establish this Court's jurisdiction in response to a motion to remand filed by Plaintiff seeking to challenge the factual basis for this Court's jurisdiction (though Defendant doubts any such challenge could or will be made, as the facts establishing this Court's jurisdiction cannot be reasonably disputed).

## II. THE ACTION – PLEADINGS, PROCESS AND ORDERS

2. On September 24, 2025, Plaintiff Jenessa Cusack ("Plaintiff") filed a putative class action Complaint in the Superior Court of California for the County of San Bernardino ("State Court"), entitled *Jenessa Cusack v. AccentCare, Inc.* Case No. CIVSB2528052. A true and correct copy of the Complaint is attached as **Exhibit A** to the Declaration of Ellen Bronchetti ("Bronchetti Decl.").

3. On November 7, 2025, Defendant filed its Answer to Class Action Complaint. **Exhibit B** to Bronchetti Decl.

4. The Complaint asserts the following causes of action: (1) failure to pay wages for all hours worked at minimum wage in violation of Labor Code §§ 1194 and 1197; (2) failure to pay overtime wages for daily overtime worked in violation of Labor Code §§ 510 and 1194; (3) failure to authorize or permit meal periods in violation of Labor Code §§ 512 and 226.7; (4) failure to authorize or permit rest periods in violation of Labor Code § 226.7; (5) failure to provide complete and accurate wage statements in violation of Laboe Code § 226; (6) failure to timely pay all earned wages and final paychecks due at time of separation of employment in violation of Labor Code §§ 201, 202, and 203; and (7) unfair business practices in violation of Cal. Business & Professions Code § 17200, *et seq*. *See* **Exhibit A** to Bronchetti Decl.

5. The Complaint seeks, among other things, alleged unpaid wages/overtime, statutory penalties, and attorneys' fees and costs on behalf of Plaintiff and the putative class. *See* **Exhibit A** to Bronchetti Decl., at Prayer for Relief.

6. In accordance with 28 U.S.C. § 1446(a), true and correct copies of all pleadings, process, and orders in the State Court file (except for the Complaint which is attached hereto as **Exhibits A**) are attached hereto as **Exhibit B** to Bronchetti Decl.

## III. TIMELINESS OF REMOVAL

7. This removal is timely. As the Ninth Circuit Court of Appeal has held and clarified, removal under the Class Action Fairness Act ("CAFA") is timely at any time so long as (1) the face of the complaint does not plainly allege all elements needed for removal (including the amount in controversy), and (2) plaintiffs have not served some other "paper" which concedes all elements needed for removal. *See Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125–26 (9th Cir. 2013) (a removing defendant may remove "on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines" set forth in 28 U.S.C. § 1446(b)(1) and (b)(3) because "a 'defendant's subjective knowledge cannot convert a non-removable action into a removable one' such that the thirty-day time limit of § 1446(b)(1) or (b)(3) begins to run against the defendant"); *see also Rea v. Michaels Stores Inc.*, 742 F. 3d 1234, 1238 (9th Cir. 2014) ("We also recently held in *Roth v. CHA Hollywood Medical Center, L.P.*, that the two 30-day periods are not the exclusive periods for removal. [Citation]. In other words, as long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time."); *see also Taylor v. Cox Commc'ns. California, LLC*, 673 F. App'x 734, 735 (9th Cir. 2016) ("A CAFA case may be removed [by a defendant] at any time, provided that neither of the two thirty-day periods under § 1446(b)(1) and (b)(3) has been triggered.").

8. Because removability is not apparent from the face of the Complaint or any other paper received by AccentCare, the removal clock has not started to run under either § 1446(b)(1) nor (b)(3). Therefore, AccentCare may "remove outside the two thirty-day

periods on the basis of its own information." *Roth*, 720 F.3d at 1125. Nonetheless AccentCare has removed within thirty days from service of Plaintiff's Complaint. This removal is therefore timely.

## IV. STATEMENT OF THIS COURT'S JURISDICTION

9. Federal courts have a "virtually unflagging obligation" to exercise the jurisdiction given to them. *Colorado River Water Conservation Dist. v. U. S.*, 424 U.S. 800, 817 (1976); *see also Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996) ("[F]ederal courts have a strict duty to exercise the jurisdiction that is conferred upon them by Congress.").

10. Further, CAFA jurisdiction—at issue here—is a favored form of jurisdiction. CAFA applies to "any class action before or after the entry of a class certification order by the court with respect to that action." 28 U.S.C. § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure § 382, California's state statute authorizing an action to be brought by one or more representative persons as a class action. *See* 28 U.S.C. § 1332(d)(1)(B); **Exhibit A** to Bronchetti Decl., Complaint, ¶ 1; Prayer for Relief.

11. CAFA jurisdiction is uniquely subject to no antiremoval presumption. Through CAFA, Congress has expressed its "overall intent . . . to strongly favor the exercise of federal diversity jurisdiction over class actions with interstate ramifications." *Jordan v. Nationstar Mort. LLC,* 781 F.3d 1178, 1183 (9th Cir. 2015). "[A]ll doubts [are] resolved 'in favor of exercising jurisdiction over the case.'" *Dutcher v. Matheson*, 840 F.3d 1183, 1190 (10th Cir. 2016) (*quoting Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1163 (11th Cir. 2006); *see also Reece v. AES Corp*., 638 F. App'x. 755, 767–68 (10th Cir. 2016) (same). Unlike other forms of removal jurisdiction, "no antiremoval presumption attends cases invoking CAFA." *Dart Cherokee*, 574 U.S. at 89; *see also Allen v. Boeing Co.*, 784 F.3d 625, 633 (9th Cir. 2015) (explaining that the Supreme Court noted "there was no presumption against [CAFA] removal jurisdiction and that CAFA should be read 'with a strong preference that interstate class actions should be heard in a federal court'").

12. This Court has original jurisdiction over this case under CAFA, 28 U.S.C. § 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. § 1441(a). Specifically, this is a putative civil class action wherein: (1) the proposed class contains at least 100 members; (2) no Defendant is a state, state official or other governmental entity; (3) there is requite diversity among the parties to this action; and (4) the total amount in controversy for all putative class members exceeds $5 million. Therefore, CAFA authorizes removal of such actions in accordance with 28 U.S.C. § 1446, and this Court should exercise the jurisdiction given to it under CAFA.[2]

### A. The Putative Class Consists of More Than 100 Members.

13. Jurisdiction is proper under CAFA if the putative class contains at least 100 members. 28 U.S.C. § 1332(d)(5)(B). While AccentCare denies that class treatment is permissible or appropriate here, the proposed class, as alleged, consists of over 100 members.

14. Plaintiff seeks to pursue her claims on behalf of behalf of a class and eight (8) subclasses. **Exhibit A** to Bronchetti Decl., Complaint, ¶ 38(A)–(I):

a. Minimum Wage Class: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four ( 4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who were not paid at least minimum wage for all time they were subject to Defendants' control. *Id.* at ¶ 38(A).

b. Overtime Class: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary

[2] AccentCare denies Plaintiff's claims and denies that the Action may be certified as a class action. However, for purposes of establishing removal under CAFA, Plaintiff's allegations identify a putative class of more than 100 members and put in controversy an amount that exceeds $5 Million in the aggregate.

employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who worked more than eight (8) hours in a workday, forty (40) hours in a workweek, and/or seven (7) days in a workweek, to whom Defendants did not pay overtime wages. *Id.* at ¶ 38(B).

c. Meal Period Class: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who worked shifts more than five (5) hours yet Defendants failed to authorize or permit all required duty-free meal periods of not less than thirty (30) minutes. *Id.* at ¶ 38(C).

d. Rest Period Class: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who worked shifts of at least three-and-a-half (3.5) hours who did not receive all required duty-free rest periods of a net ten (10) minutes for every four (4). hours worked or major fraction thereof. *Id.* at ¶ 38(D).

e. Rest Period Premium Wages Class: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from four (4) years prior to the filing of the initial Complaint in this matter through the date notice is mailed to a certified class who received additional remuneration during pay periods in which they were paid rest period premium wages and whose regular rate of pay did not include such

additional remuneration when Defendants calculated those employees' rest period premium wages. *Id.* at ¶ 38(E).

f. Record Request Class: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time within the one ( 1) year prior to the filing of the initial Complaint in this action through the date notice is mailed to a certified class who requested their employment records from Defendants but were not provided the requested records within the statutory time period. *Id.* at ¶ 38(F).

g. Wage Statement Class: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from one (1) year prior to the filing of the initial Complaint in this action through the date notice is mailed to a certified class who received inaccurate or incomplete wage and hour statements. *Id.* at ¶ 38(G).

h. Waiting Time Class: All current and former hourly non-exempt employees employed by Defendants as direct employees as well as temporary employees employed through temp agencies in California at any time from three (3) years prior to the filing of the initial Complaint in this action through the date notice is mailed to a certified class who did not receive payment of all unpaid wages upon separation of employment within the statutory time period. *Id.* at ¶ 38(H).

15. These eight (8) subclasses are collectively referred to as the California Class *Id.* at ¶ 38(I).

16. AccentCare has employed over 5,000 (substantially more than 100) hourly-paid and/or non-exempt employees in California within the four years prior to the filing of the Complaint. *See* Declaration of Kelly Moriarty ("Moriarty Decl.") ¶ 3. Although

Defendant will contest the propriety of class certification, the proposed classes that Plaintiff seeks to certify meet the CAFA proposed class size requirement.

**B. Defendant is not a Governmental Entity.**

17. AccentCare is not a state, state official, or other governmental entity.

**C. Minimal Diversity Exists.**

**1. Plaintiff's Citizenship**

18. For removal purposes, a person is a "citizen" of the state in which he or she is domiciled. *Lew v. Moss*, 797 F.2d 747, 749 (9th Cir. 1986). A party's residence is prima facie evidence of his or her domicile. *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885-86 (9th Cir. 2013).

19. Plaintiff alleges that she is and was a resident of California and was employed by AccentCare in the State of California. *See* **Exhibit A** to Bronchetti Decl., Complaint, ¶ 3. This allegation is sufficient to establish that Plaintiff resides within the State of California. *See Mondragon*, 736 F.3d at 885 ("[A] party with the burden of proving citizenship may rely on the presumption of continuing domicile, , which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change.").

**2. Defendant's Citizenship**

20. For diversity purposes, a corporation is a citizen of both its state of incorporation and the state in which it has its principal place of business. 28 U.S.C. § 1332(c)(1); *see also New Alaska Dev. Corp. v. Guetschow*, 869 F.2d 1298, 1301 (9th Cir. 1989).

21. A company's "principal place of business" for the purposes of 28 U.S.C. § 1332 is its "officers direct, control, and coordinate the corporation's activities," or its "nerve center," which "should normally be the place where the corporation maintains its headquarters—provided the headquarters is the actual center of direction, control, and coordination." *Hertz Corp. v. Friend*, 559 U.S. 77, 93 (2010).

22. AccentCare is a corporation organized under the laws of Delaware and has its principal place of business in Dallas, Texas. *See* Moriarty Decl. ¶ 4.

23. AccentCare has its headquarters, which constitute its nerve center, in Dallas, Texas, as its high-level officers oversee its activities from that location. *See id.*

24. Doe defendants are disregarded when determining diversity jurisdiction for removal. 28 U.S.C. § 1441(b)(1) ("In determining whether a civil action is removable on the basis of the jurisdiction under section 1332(a) of this title, the citizenship of defendants sued under fictitious names shall be disregarded"); *see Aguilar v. McKesson Corp.*, No. 1:16-CV-00308-LJO-SKO, 2016 WL 2616529, at *2 (E.D. Cal. May 6, 2016) ("the citizenship of the unidentified Doe defendants is immaterial for determining diversity jurisdiction.").

25. Because Plaintiff is deemed a citizen of California and AccentCare is deemed citizen of Delaware and Texas for purposes of 28 U.S.C. § 1332 (d), the Parties are adequately diverse. 28 U.S.C. § 1332(d)(2).

**D. <u>The Amount in Controversy Exceeds $5 Million</u>.**

26. CAFA requires that the amount in controversy in a class action exceed $5 Million, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). In determining the amount in controversy, CAFA requires courts to aggregate the claims of all individual class members. 28 U.S.C. § 1332(d)(6).

27. This jurisdictional element concerns "what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D. Cal. 2008) (quoting *Rippee v. Boston Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)). A court does not weigh the merits of the claims; rather, in assessing whether the amount-in-controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Exp., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)).

28. To satisfy this burden, "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee*, 574 U.S. at 89. A defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201–02 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019); *see also Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements.") (quotations and citations omitted). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Communs., Inc.*, 627 F.3d 395, 400 (9th Cir. 2010)). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee*, 574 U.S. at 87.

29. Moreover, in calculating the amount placed in controversy, defenses that a defendant may assert—such as a statute of limitation—are not considered. *Riggins v. Riggins*, 415 F.2d 1259, 1262 (9th Cir. 1969) ("[T]he possibility of such a defense being valid does not affect the jurisdiction of the district court to hear and determine the controversy"); *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010) (that "a defendant might have a valid defense that will reduce recovery to below the jurisdictional amount does not mean the defendant will ultimately prevail on that defense"); *Pagel v. Dairy Farmers of Am. Inc*, 2013 WL 12166177, *6 (C.D. Cal. July 9, 2013) (the Ninth Circuit has admonished against preliminary adjudication of affirmative defenses and defenses should not pose a barrier to jurisdiction); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, *15 (C.D. Cal. Feb. 14, 2017) (affirmative defenses may not be considered in calculating the amount in controversy); *Hernandez v. Towne Park, Ltd.*, 2012 WL 2373372, *10 (C.D. Cal., June 22, 2012) ("the fact that [defendant] may assert a limitations defense does not limit the relief sought in the complaint"); *Lara v. Trimac*

*Transp. Services (Western) Inc.*, 2010 WL 3119366, *3 (C.D. Cal., August 6, 2010) ("affirmative defenses . . . may not be invoked to demonstrate that the amount in controversy is actually less than the jurisdictional limits.").

30. Although AccentCare denies that Plaintiff's claims have any merit, for the purposes of meeting the jurisdictional requirements for removal only, if Plaintiff were to prevail on every claim and allegation in her Complaint on behalf of the putative class, the requested monetary recovery would exceed $5 Million.

31. AccentCare reserves the right to present additional evidence establishing the amount placed in controversy by each of Plaintiff's claims should Plaintiff challenge whether the jurisdictional amount-in-controversy threshold is satisfied. *See Dart Cherokee*, 574 U.S. at 87–89; *Salter*, 974 F.3d at 964 (holding that only a "factual attack" that "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings" requires the removing defendant to "support her jurisdictional allegations with competent proof") (quotations and citations omitted). "[W]hen a notice of removal plausibly alleges a basis for federal court jurisdiction, a district court may not remand the case back to state court without first giving the defendant an opportunity to show by a preponderance of the evidence that the jurisdictional requirements are satisfied." *Arias*, 936 F.3d at 924.

**1. Plaintiff's Minimum Wage Claim Places at least $18.6 Million in Controversy.**

32. Plaintiff's claim for failure to pay minimum wages pursuant to California Labor Code sections 1194 and 1197 puts at least $7.28 Million in controversy.

33. If an employer pays wages of less than minimum wage, the employee "is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage." Cal. Lab. Code § 1194(a). In addition, the "employee shall be entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid." Cal. Lab. Code § 1194.2.

34. Plaintiff alleges that she and other putative class members were not paid minimum wages for hours they worked. *See* **Exhibit A** to Bronchetti Decl., Complaint, ¶ 15

("Defendants failed to pay Plaintiff and similarly situated employees all wages at the applicable minimum wage for all hours worked."). She alleges this happened because of AccentCare's "policies, practices, and/or procedures" including, but not limited to: (1) AccentCare required "Plaintiff and similarly situated employees to travel between patients' without being paid for time traveling"; and (2) AccentCare failed "to pay Plaintiff and similarly situated employees at least minimum wage for all hours worked on-call/beeper time despite the pervasive degree of control employer exercises over Plaintiff and similarly situated employees while they are working on call." *Id.* at ¶ 15.

35. Accordingly, Plaintiff alleges that she and putative class members are entitled to recover the unpaid wages plus "liquidated damages." *Id.* at Prayer for Relief. In other words, Plaintiff seeks to recover double the allegedly unpaid minimum wages: the wages themselves and liquidated damages in equal amount.[3]

36. Based on these allegations—including Plaintiff's allegation that the failure to pay minimum wages was due to AccentCare's "policies, practices, and/or procedures"—it is reasonable to assume, for the purposes of this jurisdictional analysis only, that each putative class member worked at least one unpaid hour per week. *See Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 993-94 (9th Cir. 2022) (accepting an assumption of one unpaid hour of minimum wage per workweek as reasonable); *Mendoza v. OSI Indus., LLC*, No. EDCV 22-1202 JGB (SPx), 2022 U.S. Dist. LEXIS 167940, at *13-14 (C.D. Cal. Sep. 16, 2022) (accepting defendant's estimate of "five hours of minimum wage per week" due to plaintiff's allegation that "minimum wage violations are alleged to have occurred as a policy and practice"); *Andrade v. Beacon Sales Acquisition, Inc.*, No. CV 19-06963-CJC(RAOx), 2019 U.S. Dist. LEXIS 171460, at *10 (C.D. Cal. Oct. 1, 2019) (accepting

[3] Courts routinely include such liquidated damages in amount in controversy calculations. *See, e.g.*, *Jauregui v. Roadrunner Transp. Servs.*, 28 F.4th 989, 995 n.7 (9th Cir. 2022) ("This figure was calculated by using the same formula relied on by the district court: multiplying the hourly wage ($10.50) with the number of workweeks (63,431) for a total of $666,025.50. That number is then doubled for the liquidated damages, for a total of $1,332,051.").

defendant's assumption of "one hour of off-the-clock work . . . per workweek" based on plaintiff's allegations of a "policy and practice" of failure to pay minimum wage); *Arreola v. Finish Line*, No. 14–CV–03339–LHK, 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent" practice supports assumption that every class member "experienced at least one violation once per week"); *Francisco v. Emeritus Corp.*, No. CV 17-2871-BRO (SSx), 2017 WL 2541401, at *7 (C.D. Cal. June 12, 2017) ("Because Plaintiff claims that unpaid minimum wage and overtime violations occurred regularly, as a pattern and practice, the Court finds Defendants' assumption of one minimum wage and overtime violation per workweek to be reasonable." (citing *Campbell v. Vitran Exp., Inc.*, 471 Fed. App'x 646, 648-49 (9th Cir. 2012)); *see also Jasso v. Money Mart Exp., Inc.*, No. 11–CV–5500, 2012 WL 699465, at *5-6 (N.D. Cal. Mar. 1, 2012) (examining how the complaint informs what is a reasonable amount-in-controversy calculation and holding that a "policy" of violations permits a defendant to assume one violation per week); *Cabrera v. S. Valley Almond Co., Ltd. Liab. Co.*, No. 1:21-CV-00748-AWI-JLT, 2021 U.S. Dist. LEXIS 240881, at *24 (E.D. Cal. Dec. 16, 2021) (finding an assumption of one hour of unpaid minimum wages per week are consistent with allegations that violations occurred 'at times' and 'on occasion,'" considering the allegation that violation were due to defendant's "policies and/or practices.").

37. Artificially limiting the claim to the period four years prior to the filing of Plaintiff's Complaint to just before this removal (specifically, between October 3, 2021 and November 7, 2025), putative class members earned at least $14/hour and worked at least 260,000 workweeks. *See* Moriarty Decl. ¶ 3. Based on the reasonable assumption of 1 unpaid hour of work per workweek, this claim places in controversy at least **$7.28 Million**, calculated as follows:

| | |
|---|---|
| 260,000 workweeks x 1 hour x $14/hour | $3,640,000 in unpaid minimum wages |
| 260,000 workweeks x 1 hour x $14/hour | $3,640,000 in liquidated damages |
| Amount in Controversy (unpaid minimum wage + liquidated damages) | **$7,280,000** |

**2. Just One of Plaintiff's Nine Causes of Action Place Well Over $5 Million in Controversy.**

38. Applying the conservative assumptions above to just one of Plaintiff's nine causes of action, the Complaint places at least **$7.28 Million** in controversy.

39. This amount does not include the amount placed in controversy by Plaintiff's other claims, including her claims for overtime, meal break violations, rest break violations, wage statement violations, untimely final wages, or failure to reimburse. Nor does it include attorneys' fees, which Plaintiff seeks in the event she prevails in this action, which would increase the amount placed in controversy by 25%. *See* **Exhibit A** to Bronchetti Decl., Complaint, Prayer for Relief; *see also Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."); *see Lucas v. Michael Kors (USA), Inc.*, 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

40. In sum, Plaintiff's allegations place substantially more than the requisite $5 million in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

## V. VENUE

41. The action was filed in the Superior Court of the State of California for the County of San Bernardino. Venue properly lies in the United States District Court for the Central District of California pursuant to 28 U.S.C. §§ 84(c), 1391, 1441(a).

## VI. SERVICE ON THE STATE COURT

Pursuant to 28 U.S.C. § 1446(d), contemporaneously with the filing of this Notice of Removal in the United States District Court for the Central District of California, written notice of such filing will be given by the undersigned to Plaintiff's counsel of record, and a copy of the Notice of Removal will be filed with the Clerk of the San Bernardino County Superior Court.

WHEREFORE, the action is hereby removed in its entirety to this Court from the

Superior Court of the State of California, County of San Bernardino.

Respectfully submitted,

Dated: November 10, 2025 GREENBERG TRAURIG, LLP

By /s/ Bailey A. Hashim
Ellen M. Bronchetti
Bailey A. Hashim

Attorneys for Defendant
ACCENTCARE, INC.